Peter F. Mitchell Corp. v. Commissioner.
Peter F. Mitchell Corp. v. Commissioner
Docket No. 634-66.
United States Tax Court
T.C. Memo 1969-73; 1969 Tax Ct. Memo LEXIS 223; 28 T.C.M. (CCH) 425; T.C.M. (RIA) 69073; April 16, 1969, Filed Richard S. Pastore, 52 Vanderbilt Ave., New York, N. Y., for the petitioner. Charles M. Costenbader and Irving Bell, for the respondent. HARRON Supplemental Memorandum Opinion HARRON, Judge: The respondent determined a deficiency in income tax for the fiscal year ended March 31, 1964, in the amount of $3,148.10. The issue is whether the petitioner's *224 deferred profit-sharing plan, which covers only its three salaried employees, is a qualified plan under section 401(a), 1954 Code, so that petitioner is entitled to a deduction of $11,238.75 which it contributed to its plan in the taxable year. Respondent disallowed the deduction. The main question is whether petitioner's plan for its salaried employees, in operation, discriminates in favor of its salaried employees, and, therefore, is not a qualified plan, as respondent has determined under section 401(a)(3). Petitioner contends, inter alia, that the plan does not discriminate in favor of its officer-shareholder employees. This question is one of fact. Upon consideration of all of the evidence and all of the contentions of the parties, this issue was decided for the respondent in a Memorandum Findings of Fact and Opinion, T.C. Memo. 1968-209, filed September 23, 1968, and decision was entered for the respondent on the same date. Thereafter, the petitioner filed a motion for reconsideration. The motion was granted, and for the purpose of such reconsideration the decision, only, entered on September 23, 1968, was vacated. Section 401(a)(3)(B) of the Code authorizes *225 the respondent to determine whether an employer's profit-sharing or pension plan (or trust) is or is not discriminatory in favor of employees who are officers, or shareholders, or highly paid. Upon the the entire record, an ultimate finding has been made in this case (T.C. Memo. 1968-209, supra) that the respondent did not err in determining that petitioner's plan, covering only its salaried employees, discriminates, in operation, in favor of employees who are officer-shareholders and are highly compensated. It has been set forth in the Findings of Fact in the report in this case filed on September 23, 1968, to which references are made here, as follows: That in the taxable year the petitioner-corporation employed only three salaried employees, two being officers and shareholders; and 37 hourly-wage employees (not salaried employees). That among those 37 employees, 26 were members of trade unions having pension plans. That of those 26 employees, there were 20 employees who worked for petitioner more than three months during the taxable year, up to 12 months. That of the 20 employees, 10 were members of the Operators' Union, and 10 were members of the Laborers' Union. That petitioner *226 made contributions to the respective pension fund of both unions with respect to the 20 employees who were eligible for such employer-contributions to the union pension funds under the agreements with the unions. And it has also been found that petitioner's total contributions for 10 employees, in the fiscal year involved, amounted to $1,021.58 to the pension fund of the Operators' Union, and $1,869.76, for 10 employees, to the pension fund of the Laborers' Union; and that petitioner contributed $11,238.75 to its own profit-sharing trust for its three salaried employees, which represented 15 percent of the salary of each salaried employee covered by petitioner's own plan. One of petitioner's contentions, which petitioner describes on brief as an "alternate contention", (which has been considered heretofore but rejected without discussion, which petitioner has urged shall now be discussed) is as follows: That if comparisons are made of the petitioner-employer's contributions to the union-operated pension funds and the benefits to be derived by the employees so covered, with the petitioner-employer's contributions to its own profit-sharing plan for its three salaried employees and *227 the benefits to be derived therefrom by the salaried employees, then there is no discrimination, both as to contributions and benefits, in favor of the salaried employees who are officers, shareholders, and highly compensated. 427 In order to establish this theory, the petitioner called upon a witness, an actuary, Henry Bright, to develop such comparisons, and to attempt to make an actuarial (or mathematical) "projection" of the benefits to employees covered by each of the pension plans (union and petitioner's plan) at the age of 65, on the basis of the contributions by petitioner to each one of the three plans, under the terms of each plan, and also on the basis of petitioner's contributions to Social Security, and including Social Security benefits. A hypothetical question was presented to the witness by the petitioner. (See exhibit 12.) Petitioner argues that its witness established that "integrated retirement benefits currently projected for employees covered by union pensions to be [are] comparable or greater than integrated retirement benefits currently projected for employees covered under petitioner's profit-sharing plan." (See exhibit 12.) Without attempting to describe *228 petitioner's theory, we believe it is sufficient to state that we believe that the basic analysis of the respondent, under the facts and upon the evidence in this case, is both sound and correct, as follows: The contributions of petitioner to the union plans, covering 26 employees, equaled an average of only 3.07 percent of the wages of those hourly-wage employees covered by the union plans; whereas the contributions of petitioner to its own profit-sharing plan, covering only three of its 40 employees, two of them being shareholders, officers, and highly compensated, equaled 15 percent of their salaries. There is a disparity in the ratio of contributions which is almost five to one. The above percentages were obtained by dividing the total of contributions to each plan by the total wages paid to the participants in each plan, as reflected in joint exhibit 2-B. The percentage for the Laborers' Union is 4.13, and that for the Operators' Union is 2.01, so that the overall average percentage is 3.07. These averages do not take into account petitioner's contributions to the unions' welfare plans, since those amounts reflect benefits which may be utilized for an employee, a union member, *229 only upon the happening of contingencies, which may or may not happen to an employee. In fact, petitioner's witness did not include, in his analysis and attempted projection of benefits to union-member employees of petitioner, any consideration of petitioner's contributions under its agreements with the unions to the welfare plans of the unions. We have taken into account, of course, the point that pension plans, in general, and those of the unions referred to here by petitioner, provide benefits to those covered on the basis of age and years of coverage by such plan. See Income Tax Regs., section 1.401-4(a)(1)(ii). In addition to the extreme disparity in contributions as between salaried employees on the one hand, and hourly-paid employees on the other, the same discrimination exists regarding benefits, as testified to by the petitioner's own witness, when benefits under Social Security are eliminated. In reply to a question as to what the projected benefits would be at age 65, under the hypothetical question, for a member of each of the two unions involved, and for a salaried employee under petitioner's plan, the following answers were given, expressed *230 in terms of percentage of compensation: Employee description
Percentage ofcompensation
Laborers' Union
19.2
Operators' Union
9.65
Salaried
42.4
We agree with the respondent that even under petitioner's theory and projection, there is the existence of the kind of discrimination which led Congress to adopt the requirements in section 401(a)(4): In order to insure that stock bonus, pension, or profit-sharing plans are operated for the welfare of employees in general, and to prevent the trust device from being used for the benefit of shareholders, officials, or highly paid employees. * * * H. Rept. 2333, 77th Cong., 2d Sess. (1942), C.B. 1942-2, 372, 450. Section 401(a)(4) prohibits discrimination with respect to benefits and contributions. See Income Tax Regs., section 1.401-4. There is present here, as stated above, the proscribed discrimination with respect to contributions under petitioner's profit-sharing plan, as contrasted with petitioner's contributions to the union pension plans, almost five to one. It is our conclusion that petitioner has failed to establish the absence of discrimination as to benefits under the profit-sharing *231 plan, as contrasted with benefits under the union pension plans. See Rev. Rul. 66-15, 1966-1 C.B. 83; Rev. Rul. 65-178, 1965-2 C.B. 94; and I.T. 3678, 1944 C.B. 321. Petitioner's attempted "projection" with respect to the comparative benefits under the union pension plans, as compared with petitioner's profit-sharing plan, is one which 428 is without validity, in our opinion. The petitioner did not establish that the comparative method used by its witness, Bright, for attempting to make a "projection" of benefits to be realized under the respective pension plans involved in his comparisons and attempted projections (utilizing the figures for petitioner's contributions), has ever received the stamp of approval of either the respondent's regulations, or rulings, or any other authoritative source. Bright's analysis, method, and attempted projection of benefits appears to be an original method in which a statistical, or actuarial, technique is used. Moreover, Bright's projection of benefits was based upon facts selected and employed by petitioner's counsel in his hypothetical question. Over objection of opposing counsel, this Court received *232 Bright's testimony for what it might be worth, in order to give petitioner full opportunity to present its theory under the facts and circumstances of this case. Having considered carefully all of Bright's testimony, our conclusion is that it is not entitled to receive much weight, in general, for the purposes of the issue in dispute in this case. It is recognized that counsel's hypothetical question probably was prepared with the suggestions of Bright, because the hypothetical question employed what is sometimes called by statisticians a "sample" method of analysis and comparison. That is to say, Bright was asked to use as the basis of his projection of benefits, facts relating to two employees in each class or category, i.e., two of petitioner's salaried employees covered by its own profit-sharing plan whose salaries are $35,000 a year, each; two employees covered by the pension plan of the Laborers' Union; and two employees covered by the pension plan of the Operators' Union. We refer to, but do not deem it necessary to describe, all of petitioner's hypothetical question, but note that it has been fully considered. In the absence of convincing evidence and proof that the method, *233 of comparisons and projections of benefits, used by petitioner's witness, is a valid method supported by a recognizable authority, we are obliged to conclude in this case that the attempted projection of benefits cannot be found to be a valid basis for holding that petitioner's profit-sharing plan for its three salaried employees was not discriminatory in their favor with respect to benefits to be derived by the employees covered by that plan, for the purpose of satisfying the requirements of section 401(a) (4). We conclude, further, that such comparisons as petitioner has attempted to make, cannot be made validly as the basis for claiming that petitioner's profit-sharing plan is a qualified plan under section 401(a)(4). The amount of the contributions by petitioner directly determines the benefits under its profit-sharing plan. It is held that the proscribed discrimination is present here with respect to both contributions and benefits, and that therefore petitioner's profit-sharing plan is not a qualified plan under the statute. Upon reconsideration, and upon consideration of the entire record and all of the arguments on brief, we conclude, again, that respondent did not err in *234 determining that petitioner's profit-sharing plan discriminates in favor of its salaried employees, who are highly paid, and are officers and shareholders. We conclude, also, that in making his determination, the respondent did not abuse the discretion given to him by the applicable statute. Decision will be entered for the respondent.